IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CODY H.A. HUTTON, #S11666, <br> AARON HARDWICK, #K89869, and <br> MICHAEL J. GILFORD, #K63568, <br><br> Plaintiffs, <br><br> vs. <br><br> ROB JEFFREYS, <br> SARAH BROWN-FOILES, and <br> HEATHER J. DeLASHMUTT, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 22-cv-2683-SMY <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs Cody Hutton, Aaron Hardwick, and Michael Gilford, currently incarcerated at the Big Muddy River Correctional Center ("BMRCC"), bring this civil rights action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations resulting from being indefinitely confined as civil detainees under the Illinois Sexually Dangerous Persons Act ("SDPA"), 725 ILCS 205/1.01 *et seq*. (Doc. 1). They assert violations of the Eighth and Fourteenth Amendments, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. and the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq*. Plaintiffs sue each Defendant in his or her official capacity only and seek declaratory and injunctive relief. (Doc. 1, pp. 11, 23-24).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be

1

dismissed.  28 U.S.C. § 1915A(b).

## The Complaint

Plaintiffs make the following allegations in their Complaint (Doc. 1):  Each Plaintiff was civilly committed as a sexually dangerous person ("SDP") under the Illinois SDPA after accepting accountability and stipulating to their need for treatment of their mental conditions.  Each has participated in the therapeutic programs offered by the Sexually Dangerous Persons Program ("SDPP") at BMRCC.  Hutton was committed in 2011 at age 19 and is now age 31; Hardwick was committed in 2019 at age 35 and is now age 58; and Gilford was committed in 2000[1] at age 47 and is now age 69.

At the time the Complaint was filed, each Plaintiff was receiving only one hour of group therapy per week, which is cancelled and not rescheduled at least one out of every three weeks. No didactic groups or workbooks are offered and there is no specific curriculum. This programming is well below the national average of 7.5 hours per week for such programs.  No Plaintiff has received a semi-annual evaluation since 2019 and they have not been given an updated SDPP individualized treatment plan for more than 1.5 years.[2]  The SDPP manual provides that each participant shall receive an individual treatment plan bi-annually.  Because of these deficiencies in the SDPP, Plaintiffs are unable to make progress toward recovery or eventual release.  (Doc. 1, p. 4-8, 11-12).  They are "serving what amounts to a lifetime sentence…under the guise of treatment and rehabilitation."  (Doc. 1, p. 13).

Plaintiffs' conditions of confinement are punitive and identical to those for convicted felons at BMRCC, including lockup time in cells averaging 21 hours per day, poor health care,

---

[1] Gilford's commitment was overturned in 2009 but he then stipulated to the State's petition to declare him sexually dangerous and remained in custody.  (Doc. 1, p. 8).
[2] Hardwick's most recent individual treatment plan was issued in approximately 2020.  (Doc. 1, p. 7).

punitive shakedowns and cell searches, and severe property restrictions.

Defendant Rob Jeffreys (Director of the Illinois Department of Corrections, "IDOC") is Plaintiffs' legal guardian and has failed to adequately staff or fund the SDPP. Sara Brown-Foiles is the Coordinator of the IDOC's Sex Offender Programs; she hires the SDPP staff and approves the SDPP treatment modules. Heather DeLashmutt is the SDPP's Clinical Director; she is the only SDPP staff member and is solely responsible for providing sex offender therapy to Plaintiffs.[3] Her absences due to medical issues resulted in many cancellations of therapy sessions and Defendants failed to remedy the staffing shortage. The ratio of clinical staff to patients should be one to ten, but the SDPP was operating at just one clinical staff for approximately 152 patents at the time the Complaint was filed. (Doc. 1, pp. 3-4, 8-11).

Based on the allegations in the Complaint and Plaintiffs' articulation of their claims, the Court designates the following claims in this *pro se* action:

Count 1: Defendants violated Plaintiffs' Eighth and Fourteenth Amendment rights by failing to adequately fund and staff the Illinois Sexually Dangerous Persons Program.

Count 2: Defendants violated Plaintiffs' Fourteenth Amendment right to receive adequate treatment for their mental illnesses and disorders.

Count 3: Defendants violated Plaintiffs' Fourteenth Amendment right to receive individualized treatment designed to effect their recovery from the mental illnesses/disorders that resulted in their civil commitment as SDPs.

Count 4: Defendants violated Plaintiffs' rights under the ADA and RA by failing to provide Plaintiffs with treatment and excluding them from certain programs available to other inmates.

Count 5: Defendants violated Plaintiffs' Fourteenth Amendment due process right by failing to provide recovery/release evaluations that are unbiased and adhere to professional standards.

---

[3] Plaintiffs note that DeLashmutt "is an exceptional therapist" and include her in this suit not to attack her, but to challenge the system she is part of. (Doc. 1, p. 11).

Count 6:  Section 9(d) of the Illinois Sexually Dangerous Persons Act (725 ILCS 205) violates Plaintiffs' Fourteenth Amendment right to be released upon recovery.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[4]

## Discussion

### Counts 1, 2, and 3

Individuals who are civilly committed under the SDPA are considered pretrial detainees. *See Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013). A pretrial detainee's claim for improper medical treatment is considered under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, which applies to convicted prisoners.

A standard of objective reasonableness, rather than deliberate indifference, governs medical claims under the Fourteenth Amendment's Due Process Clause. *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019); *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (citing *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018)). This Court has previously recognized claims brought pursuant to § 1983 for failure to treat SDPs. *See, e.g.*, *Howe v. Godinez*, No. 14-cv-844-SMY, 2014 WL 4947245 at *3-4 (S.D. Ill. 2014) (due process requires that the conditions and duration of confinement...bear some reasonable relation to the purpose for which persons are committed"); *Howe*, 558 F. Supp. 3d 664 (S.D. Ill., Sept. 6, 2021); *Sprague v. Jeffreys*, No. 22-cv-424-NJR (S.D. Ill. July 13, 2022).

At this stage, Plaintiffs state cognizable Fourteenth Amendment claims for Counts 1, 2, and 3 to proceed against all defendants. However, the portion of Count 1 that invokes the Eighth

---

[4] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

4

Amendment is dismissed.

### Count 4

To state a prima facie case of discrimination under both the ADA and the RA, a plaintiff must plead sufficient facts to show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id*. at 810 n.2; *see also* 29 U.S.C. § 794(a). The ADA applies to state prisons, as all such institutions receive federal funds. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

Under Title II of the ADA regarding discrimination in public accommodations, "qualified individual with a disability" means "an individual with a disability who, with or without...the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability" includes "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).

Plaintiffs invoke the protections of the ADA and RA based on their designation as "mentally disabled civilly detained mental health patients." (Doc. 1, p. 19). They do not claim to have any other disabling condition(s) that would bring them within the ADA's definition of a "qualified individual with a disability" or the similar provisions of the RA.[5] The ADA and its related regulations specifically exclude "sexual behavior disorders" from the definition of "disability." 42 U.S.C.A. § 12211(b)(1); 28 C.F.R. § 35.108(g)(1). As such, Plaintiffs' SDP

---

[5] Plaintiff Hardwick references a "psychological condition" resulting in mental distress that has caused him to miss some therapy sessions, however, the Complaint does not elaborate on this condition. (Doc. 1, p. 7).

designation does not confer any protections of the ADA or RA. Because Plaintiffs do not allege that they suffer from any "disability as defined in the statutes," the Complaint fails to state a viable ADA or RA claim. Count 4 will therefore be dismissed without prejudice.

### Count 5

Plaintiffs assert that Defendants contract with Wexford Health Services, Inc., to conduct recovery/release evaluations for SDPs and that the Wexford evaluators do not adhere to generally accepted professional standards or practices for the socio-psychiatric assessment and evaluation of civilly committed sex offenders. These evaluations are significant in determining Plaintiffs' eligibility for release from the SDPP. The complaint allegations are sufficient to allow Count 5 to proceed for further consideration against all Defendants.

### Count 6

Plaintiffs claim that Section 9(d) of the SDPA is unconstitutional because it "imposes a determined timed sentence, within the indeterminate civil scheme," in violation of the liberty interest in the Fourteenth Amendment. (Doc. 1, p. 22). Specifically, they assert the Illinois statute "applies a 2 year sentence" beginning from the most recent disposition of the denial of recovery by the circuit court, regardless of the committed person's psychological condition.

Section 9(d) of 725 ILCS 205 relates to the procedure for a person designated as SDP to file an application with the committing court for a ruling that the SDP has recovered. It provides:

> If a person has previously filed an application in writing setting forth facts showing that the sexually dangerous person or criminal sexual psychopathic person has recovered and the court determined either at a hearing or following a jury trial that the applicant is still a sexually dangerous person, or if the application is withdrawn, no additional application may be filed for 2 years after a finding that the person is still sexually dangerous or after the application is withdrawn, except if the application is accompanied by a statement from the treatment provider that the applicant has made exceptional progress and the application contains facts upon which a court could find that the condition of the person had so changed that a hearing is warranted.

6

725 ILCS 205/9(d).

The plain language of this statute includes an exception to the two-year bar on filing a new application for release/recovery, if the SDP's treatment provider states that the person has "made exceptional progress" and a court could find a change in the person's condition. Thus, the two-year limitation period does not impose a determinate two-year sentence "regardless of [Plaintiffs'] psychological condition[s]," as Plaintiffs claim. Because the statute provides a pathway for an SDP applicant to surmount the two-year limitation on bringing a new recovery application, it does not run afoul of the Fourteenth Amendment. Count 6 will be dismissed without prejudice.

## Disposition

The Complaint states colorable Fourteenth Amendment claims in Counts 1, 2, 3, and 5 against Defendants Jeffreys, Brown-Foiles, and DeLashmutt in their official capacities. Counts 4 and 6, and the portion of Count 1 that invokes the Eighth Amendment, are **DISMISSED** without prejudice.

The Clerk shall prepare for Rob Jeffreys, Sarah Brown-Foiles, and Heather DeLashmutt (each in his/her official capacity): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer

shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiffs are **ADVISED** that if judgment is rendered against them and the judgment includes the payment of costs under 28 U.S.C. §1915, they will be required to pay the full amount of the costs, even if their application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiffs are further **ADVISED** that each of them is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate a Plaintiff's whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act, for each Plaintiff.

The Clerk of Court is **DIRECTED** to send a copy of this Order to each Plaintiff.

**IT IS SO ORDERED.**

**DATED: July 26, 2023**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiffs

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.